CC TO JUDGE __DM__

FILED _____ ENTERED
_____ LODGED _____ RECEIVED

**MAY 2 3 2003** DM

AT SEATTLE
CLERK U S DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

CV 03 00929 #00000004

---

NILO D  TUAZON,

        Plaintiff,

     vs

R J  REYNOLDS TOBACCO COMPANY,

        Defendant.

No    CV 03-0929 P

AMENDED COMPLAINT

    PLAINTIFF NILO D  TUAZON amends his Complaint filed April 21, 2003, and alleges as follows

### JURISDICTION AND VENUE

    1     Plaintiff Nilo D  Tuazon is a citizen of the State of Washington, residing in Renton, King County, Washington

    2     Defendant R J  Reynolds Tobacco Co  [hereinafter referred to as "RJR Tobacco"] is a foreign corporation with its principal place of business at 401 Main Street, Winston-Salem, North Carolina 27102-2866.  Throughout the relevant time, it sold cigarettes under various brand names including "Salem" in the United States

---

AMENDED COMPLAINT
(No  CV 03-0929 P)

    1

355 Ericksen Avenue NE, Suite 421
Post Office Box 11440
Bainbridge Island, Washington 98110
(206) 855-0838





3       Plaintiff seeks an amount in excess of Seventy-five Thousand Dollars

($75,000 00) in damages

4       This Court has jurisdiction of this matter pursuant to the provisions of 28 USC §

1332(a) [Diversity of Citizenship]

## APPLICATION OF FOREIGN LAW

5       During most of the time relevant to plaintiff's Complaint, he resided in the

Republic of the Philippines ["Philippines"]

6       Some of the conduct of the defendant, described below, took place in the United

States and in other countries, and other conduct and the resulting harm to plaintiff took place in

the Philippines

7       Plaintiff alleges pursuant to Federal Rule of Civil Procedure 44 1 that the laws of

the Republic of the Philippines apply to this matter

## AFFILIATES, SUBSIDIARIES AND LICENSEES

8       Defendant RJR Tobacco is owned by R J  Reynolds Tobacco Holdings, Inc.,

which is a successor to RJR Nabisco Holdings, Inc.  During most of the relevant time herein, R J.

Reynolds International, Inc  was similarly owned, and as an affiliate of defendant RJR Tobacco

sold "Salem" brand cigarettes in other countries  It licensed its brand to Fortune Tobacco

International, Ltd  for the sale of "Salem" cigarettes in the Republic of the Philippines

9.      In 1999, R J  Reynolds International, Inc  was sold to aJapan Tobacco, Inc , and

use of the "Salem" trademark in countries other than the United States, including the Philippines

was transferred to it together with the business and other international trademarks of R J

Reynolds International, Inc   R J  Reynolds International was renamed Japan Tobacco

International, Inc  and is a wholly-owned subsidiary of Japan Tobacco, Inc   Various subsidiaries

AMENDED COMPLAINT                           2          355 Ericksen Avenue NE, Suite 421
(No  CV 03-0929 P)                                              Post Office Box 11440
                                                       Bainbridge Island, Washington 98110
                                                                    (206) 855-0838

FERGUSON|BEAN

1    of Japan Tobacco International, Inc  exist in different countries, including  JT International

2    (Philippines), Inc

3                                    **CONSPIRACY**

4         10    Since December, 1953, and continuing to the present time, defendant RJR

5    Tobacco has combined and conspired with various other tobacco companies in the United States

6    and in other countries in a manner more fully described below  Its co-conspirators in the United

7    States and abroad include Philip Morris, Inc , British American Tobacco Co , Ltd  and its U S

8    subsidiary, Brown & Williamson Tobacco Co  Co-conspirators abroad include Reemtsma

9    Cigarettenfabriken GmbH, Imperial Tobacco Ltd , Rothmans International, Inc  and Japan

10   Tobacco, Inc  Various subsidiaries and affiliates of each were and are also co-conspirators of

11   defendant RJR Tobacco  Within the United States, other co-conspirators include the former

12   American Tobacco Co , Inc , and for at least substantial periods of the conspiracy, Lorillard

13   Tobacco Co , Inc  and Liggett & Myers, Inc

14        11    Following meetings in New York in December, 1953 and early 1954, executives

15   of defendant RJR Tobacco agreed with their counterparts from American Tobacco, Brown &

16   Williamson, Lorillard, Philip Morris and others to create the "Tobacco Industry Research

17   Committee" [TIRC]  The purpose of the organization was to ensure that the U S  cigarette

18   manufacturers coordinate their advertising, public statements, marketing behavior and research

19   activities to avoid any concession that might cause decreases in sales of cigarettes or be used

20   against them in litigation in the future  In particular, the conspirators agreed that none would do

21   anything to suggest that cigarette smoking causes any disease and none would do anything to

22   suggest that nicotine is addictive  Additional agreements became part of the conspiracy over

AMENDED COMPLAINT                    3            355 Ericksen Avenue NE, Suite 421
(No  CV 03-0929 P)                                              Post Office Box 11440
                                                   Bainbridge Island, Washington 98110
                                                                       (206) 855-0838

FERGUSON|BEAN

1   time and the Tobacco Institute and Council for Tobacco Research succeeded TIRC, but the

2   essential purpose of the conspiracy remained unchanged

3       12      In December, 1977, the U S conspiracy was formally extended internationally

4   In that month, executives of defendant RJR Tobacco met secretly in the United Kingdom with

5   counterparts from British American, Imperial, Philip Morris, Reemtsma and Rothmans   The

6   executives agreed to create the "International Committee on Smoking Issues" [ICOSI]   The

7   objectives of ICOSI and the international conspiracy were identical to those of TIRC and the

8   U S conspiracy   Defendant RJR Tobacco was chosen to lead the organization's "Working Party

9   on Social Acceptability of Smoking "   The conspirators agreed to coordinate their behavior to

10  avoid any concession that might cause decreases in sales of cigarettes or be used against them in

11  litigation in the future   Additional agreements became part of the conspiracy over time and

12  "Infotab" succeeded ICOSI, but the essential purpose of the conspiracy remained unchanged

13      13      Among other means used to ensure that all cigarette companies adhered to a

14  uniform standard of behavior, defendant RJR Tobacco and the other international conspirators

15  agreed that each would require their respective affiliates, subsidiaries and licensees to conform to

16  the same standard   In addition, they agreed to create "National Marketing Associations" [NMA]

17  in every country in which any of them did business to ensure that the Industry spoke with a

18  single voice throughout the world   Among the NMA created is the "Philippine Tobacco

19  Institute," which furthers the activities of the conspiracy by coordinating Industry public

20  statements and other activity in the Philippines

21      14      Defendant RJR Tobacco and the other international conspirators also agreed to

22  create regional marketing associations, to coordinate Industry public statements and other

23  activity in various parts of the world   Among the regional marketing associations it formed is

AMENDED COMPLAINT                4        355 Ericksen Avenue NE, Suite 421
(No  CV 03-0929 P)                                 Post Office Box 11440
                                          Bainbridge Island, Washington 98110
                                                      (206) 855-0838

**FERGUSON|BEAN**

the "Asian Tobacco Council," created in 1990   The Asian Tobacco Council furthers the

activities of the conspiracy by coordinating Industry public statements and other activity in Asian

countries, including the Philippines

15     As a result of the Industry's conspiratorial agreements, defendant RJR Tobacco

and the other co-conspirators completely control their respective affiliates, subsidiaries and

licensees with regard to advertising policies, public statements, and responses to government

initiatives, such as warning labels, in every country in the world in which one or more of them

does business, including in the Philippines

16     Among other results of the Industry's conspiratorial agreements, the following

took place in the Philippines

a.     Packages of cigarettes sold in the Philippines were not required to carry

any health warning labels until 1993   Even then, implementation of the Philippine law was

delayed by litigation initiated by the co-conspirators.

b     In public statements in the Philippines, the various instrumentalities of

defendant RJR Tobacco and its co-conspirators, including their respective affiliates, subsidiaries

and licensees and other instrumentalities, including Infotab, the Asian Tobacco Council and the

Philippine Tobacco Institute denied that cigarette smoking causes any disease

c     In public statements in the Philippines, the various instrumentalities of

defendant RJR Tobacco and its co-conspirators, including their respective affiliates, subsidiaries

and licensees and other instrumentalities, including Infotab, the Asian Tobacco Council and the

Philippine Tobacco Institute denied that nicotine is an addictive drug

17     Defendant RJR Tobacco has known, or should have known since the 1950s that

cigarette smoking causes disease

AMENDED COMPLAINT                    5               355 Ericksen Avenue NE, Suite 421
(No CV 03-0929 P)                                              Post Office Box 11440
                                                      Bainbridge Island, Washington 98110
                                                                  (206) 855-0838

FERGUSON|BEAN

18     Defendant RJR Tobacco has known, or should have known, since the 1960s at the
latest that nicotine is an addictive drug.

## CLAIM FOR RELIEF
## NEGLIGENCE AND
## GROSS NEGLIGENCE

19     Plaintiff began smoking "Salem" brand cigarettes in 1958 and is addicted to
nicotine

20     Plaintiff has Chronic Obstructive Pulmonary Disease ["COPD"] as a result of
smoking "Salem" cigarettes

21.    Defendant RJR Tobacco supplies and controls design standards and various
ingredients and additives used by its licensee Fortune Tobacco to manufacture "Salem"
cigarettes in the Philippines

22.    Defendant RJR Tobacco owed a duty to plaintiff to reveal all material facts
concerning its products, including whether they caused disease and whether they contain an
addictive drug

23     Defendant RJR Tobacco owed a duty to plaintiff to design, manufacture and
market cigarettes that do not pose an unreasonable risk of disease and addiction

24     Defendant RJR Tobacco designed, manufactured and sold "Salem" cigarettes,
which it knew or should have known pose an unreasonable risk of disease to those who smoke
them

25     RJR Tobacco did not adequately test "Salem" cigarettes or their constituents in
order to permit it or its licensees to properly warn users or to manufacture cigarettes that reduced
the risks to users

AMENDED COMPLAINT                        6              355 Ericksen Avenue NE, Suite 421
(No  CV 03-0929 P)                                                   Post Office Box 11440
                                                          Bainbridge Island, Washington 98110
                                                                            (206) 855-0838

FERGUSON|BEAN

26      Defendant RJR Tobacco failed to adequately warn plaintiff of the risks of diseases associated with smoking "Salem" cigarettes, including the risk of developing COPD, and of the potential for addiction to nicotine

27      Defendant RJR Tobacco and its licensee failed to manufacture and market products that reduce the risks to users, despite their abilities to do so

28.      Defendant RJR Tobacco and its licensee use various methods to enhance and otherwise increase the bioavailability and/or the addictiveness of the nicotine contained in "Salem" cigarettes

29      Defendant RJR Tobacco breached each duty described herein that it owed to plaintiff

30      Through its participation in the conspiracy described above, defendant RJR Tobacco caused each of its affiliates, subsidiaries and licensees to conform to the conspiracy, thus breaching its duties to plaintiff

31      The acts and omissions of defendant RJR Tobacco constitute negligence and gross negligence.

32      Plaintiff was proximately injured as a result of the negligence and gross negligence of defendant RJR Tobacco, and damaged thereby

33      Defendant RJR Tobacco is liable to plaintiff for its negligence and gross negligence pursuant to the provisions of the Civil Code of the Philippines [hereinafter referred to as "Civil Code"], Title XVII, Chapter 2, Article 2176, which provides in relevant part, "Whoever by act or omission causes damage to another, there being fault or negligence, is obliged to pay for the damage done "

AMENDED COMPLAINT                    7         355 Ericksen Avenue NE, Suite 421
(No CV 03-0929 P)                                             Post Office Box 11440
                                                  Bainbridge Island, Washington 98110
                                                                      (206) 855-0838

FERGUSON|BEAN

**DAMAGES**

34      Defendant RJR Tobacco is liable for all damages caused by its negligence and gross negligence, pursuant to the Civil Code, Title XVIII, Chapter 2, Article 2002, which provides in relevant part, "In crimes and quasi-delicts, the defendant shall be liable for all damages which are the natural and probable consequences of the act or omission complained of"

35      Plaintiff's damages consist of actual damages, including, but not limited to damages "For loss or impairment of earning capacity in cases of temporary or permanent personal injury " Civil Code, Title XVIII, Chapter 2, Article 2205.

36      Plaintiff's damages also include moral damages  "Moral damages include physical suffering, mental anguish, fright, serious anxiety, besmirched reputation, wounded feelings, moral shock, social humiliation, and similar injury  Though incapable of pecuniary computation, moral damages may be recovered if they are the proximate result of the defendant's wrongful act or omission " Civil Code, Title XVIII, Chapter 3, Section 1, Article 2217

37      Plaintiff is entitled to exemplary damages, which may be granted where the defendant acted with gross negligence  Civil Code, Title XVIII, Chapter 3, Section 5, Articles 2229-2234

38      Plaintiff is entitled to his attorneys' fees and expenses of litigation in the event exemplary damages are awarded, or if the Court deems it just and equitable that the same should be recovered. Civil Code, Title XVIII, Chapter 2, Article 2208.

WHEREFORE, plaintiff prays for relief against defendants RJR Tobacco as follows,

1      For determination that the law of the Republic of the Philippines applies to this action,

AMENDED COMPLAINT                                  8
(No CV 03-0929 P)

355 Ericksen Avenue NE, Suite 421
Post Office Box 11440
Bainbridge Island, Washington 98110
(206) 855-0838



2      For judgment for plaintiff's actual and moral damages in such amounts as shall be proven at trial;

3      For judgment for exemplary damages in such amount as determined at trial,

4      For award of plaintiff's attorneys' fees and expenses; and

5      For such other and further relief as the Court deems just and proper.

Dated May 23, 2003

**FERGUSON | BEAN PLLC**

By _____

Jon P. Ferguson, WSBA No  5619
Jeffrey P  Bean, WSBA No  17967

Attorneys for Plaintiff

AMENDED COMPLAINT                        9          355 Ericksen Avenue NE, Suite 421
(No  CV 03-0929 P)                                               Post Office Box 11440
                                                      Bainbridge Island, Washington 98110
                                                                        (206) 855-0838

**FERGUSON|BEAN**